UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LIDIA GOODWIN,

      Plaintiff,

v.                                                                CASE NO. 6:20-cv-1291-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB").   Following an administrative hearing held on May 29, 2019, the assigned Administrative Law Judge ("ALJ") issued a decision on July 8, 2019, finding Plaintiff not disabled from April 8, 2017, the alleged disability onset date, through December 31, 2018, the date last insured.   (Tr. 21-59.)   Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.   (Doc. 17.)

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).   "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff raises two issues on appeal.   First, she argues that the ALJ

did not offer sufficient justification for finding Plaintiff's testimony regarding her symptoms from asthma (shortness of breath and coughing) and rheumatoid arthritis (chronic joint pain and stiffness) to be inconsistent with the evidence.   Plaintiff asserts that the ALJ failed to meaningfully address any of the factors listed in 20 C.F.R. § 404.1529(c)(3), including Plaintiff's daily activities, medications, and their side effects.   Further, Plaintiff argues that the ALJ erred in concluding that her irritable bowel syndrome ("IBS") was not a severe impairment at step two of the sequential evaluation process,[2] and in failing to account for the symptoms associated with this impairment (such as inflammation, abdominal pain, diarrhea, and dizziness) and any resulting limitations (such as the need to be off task) in the residual functional capacity ("RFC") assessment.

Defendant responds that the ALJ properly discounted Plaintiff's subjective complaints that were inconsistent with other substantial evidence, found her IBS to be non-severe in accordance with the regulations and Eleventh Circuit case law, and relied on the testimony of a Vocational Expert ("VE") to find that Plaintiff was not disabled.

## A.   The ALJ's Decision

---

[2] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the following severe impairments: rheumatoid arthritis, degenerative joint disease of the right shoulder, asthma with lung nodules and interstitial changes, anemia, chronic eczematoid otitis externa and conductive hearing loss, vertigo, chronic rhinitis, adjustment disorder, depressive disorder, and generalized anxiety disorder.   (Tr. 23.)   The ALJ then found that Plaintiff's IBS, gastroesophageal reflux disease ("GERD"), insomnia, hyperlipidemia, hypothyroidism, and cataract were non-severe impairments because they did not significantly limit Plaintiff's ability to perform basic work activities.   (*Id.*)   The ALJ stated that he considered all of Plaintiff's medically determinable impairments, including the non-severe ones, in assessing the RFC.   (*Id.*)

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform a reduced range of light work,[3] as follows:

> With her right upper extremity, the claimant can frequently operate hand controls and reach in all directions, including overhead.   The claimant can occasionally climb ramps and stairs.   She can never climb ladders, ropes, or scaffolds.   She can occasionally balance, stoop, kneel, crouch, and crawl.   She can have occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibration.   She can work in moderate noise levels.   She can have

---

[3] By definition, light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; it requires a good deal of walking, standing, or sitting most of the time with some pushing and pulling of arm or leg controls.   20 C.F.R. § 404.1567(b); SSR 83-10.

4

no exposure to hazards, such as unprotected heights and moving machinery.   She can perform simple, routine, and repetitive tasks.   She can make simple work-related decisions.   She can have occasional interaction with co-workers, supervisors, and the general public.

(Tr. 25.)   In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR [§] 404.1529 and SSR 16-3p."   (*Id.*)

The ALJ discussed Plaintiff's subjective complaints, the statements by her husband, the objective medical findings, and the records and opinions of treating, examining, and non-examining sources.   (Tr. 26-31.)   The ALJ addressed the subjective complaints as follows:

Prior to the hearing, the claimant reported she has limited range of motion in her arms and shoulders.   She also experiences pain and stiffness in her joints with inflammation.   She stated she cannot lift more than 10 pounds.   She experiences fatigue, anxiety, and anger.   She stated she is unable to work on a task for long periods.   She cannot stand for long periods.   She stated she has difficulty dressing, bathing, and carrying [sic] for her hair.   She stated she does not prepare her own meals.   She can perform laundry and household chores.   She stated [she] does not go out alone or do any social activities.   She reported limitations completing tasks and concentrating . . . .

Thomas Goodwin, the claimant's spouse, stated the claimant is unable to work due to bone issues, a rotator cuff injury, and arthritis.   He stated that she exhibits limited range of motion and has limitation standing or sitting.   She must have immediate access to restrooms.   The claimant has difficulty dressing, bathing, and caring for her hair due to difficulty lifting her arms overhead and bending.   He stated she is able to

prepare her own meals and [do] limited housework.   The claimant has limitations lifting, squatting, bending, standing, reaching, walking, stating [sic], kneeling, hearing, using her hands, climbing stairs, and concentrating . . . .

During a telephone call with a state agency disability examiner, Mr. Goodwin reported the claimant experiences shortness of breath at times without activity triggers.   She uses an inhaler which is helpful.   . . .

. . .

At the hearing, the claimant testified she drives about once a week, and goes to the doctor or to the supermarket.   She stated it is difficult to drive due to pain in her arms and limitations lifting her arm.   She stated she experiences swelling in her arms every[]day.   Her medication does not help much.   She also stated she has inflammation throughout her whole body.   She stated she has allergies, asthma, and problems with her small intestine and immune system.

The claimant testified she has an inhaler and nebulizer for her asthma.   She stated she uses her nebulizer about twice a month. She stated she is allergic to dust.   She stated she has difficulty sleeping due to anxiety.   She denied doing any social activities.

The claimant testified she is able to do chores and cooking, but this frequently causes inflammation throughout her entire body. She stated she can only do chores for 15 minutes at a time, and then rest for the remainder of the day.   She stated she can sit for about 20 minutes and stand for 45 minutes.   She reported she can walk up to 3 miles.   She did not believe she can lift more than a gallon of milk.

(Tr. 26, 29-30.)

Then, the ALJ found that while Plaintiff's medically determinable

impairments could reasonably be expected to cause the alleged symptoms,

her statements concerning the intensity, persistence, and limiting effects of

those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 30.) The ALJ explained that Plaintiff's statements regarding her mental symptoms were inconsistent because she "reported experiencing improvement with Lexapro." (*Id*.) As to Plaintiff's physical impairments, the ALJ stated that the imaging scans of her lungs showed the abnormalities had stabilized and "[h]er other impairments were controlled with medication, as she did not require significant emergency medical treatment." (*Id*.)

The ALJ concluded that his RFC assessment was supported by Plaintiff's rheumatoid arthritis and degenerative joint disease. (Tr. 31.) The ALJ added:

> The manipulative limitations are based on the changes in the claimant's right shoulder. The postural limitations are consistent with the claimant's arthritic pain. The environmental limitations are based on the claimant's rhinitis and asthma due to her sensitivity to pulmonary irritants. The preclusion from hazards is based on the claimant's vertigo and hearing loss. Due to the claimant's anxiety and other mental impairments, the claimant is limited to simple work tasks with only occasional interaction with co-workers, superiors, and the general public.

(*Id*.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id*.) However, at the fifth and final step of the sequential evaluation, the ALJ determined, after considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, that there were jobs existing

in significant numbers in the national economy that Plaintiff could have performed through her date last insured.   (Tr. 32.)   The representative occupations were light-duty jobs with a Specific Vocational Preparation ("SVP") of 2.   (*Id.*)

## B.   Analysis

Turning to the first issue, when a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies.   *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).   "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so."   *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her pain is disabling through "objective medical evidence from an acceptable medical source that shows . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms," pursuant to 20 C.F.R. § 404.1529(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or

8

other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561. *See also* SSR 16-3p[4] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
> . . .
> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent."   It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[5]   The

---

[4]  SSR 16-3p rescinded and superseded SSR 96-7p, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character."   SSR 16-3p.

[5]  These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the

determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.
. . .
In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities." *Id.* "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are

---

pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

inconsistent with the overall evidence of record." *Id.*   However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.*   In considering an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

Here, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of

those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 30.) The ALJ explained that the imaging scans of Plaintiff's lungs showed the abnormalities had stabilized and "[h]er other impairments were controlled with medication, as she did not require significant emergency medical treatment." (*Id*.)

The ALJ provided explicit and adequate reasons, supported by substantial evidence, for his evaluation of Plaintiff's subjective complaints. The ALJ properly noted that the chest CT scans over a period of time showed that any abnormalities had stabilized. (*Compare* Tr. 435 (noting that a May 20, 2017 chest CT scan showed, *inter alia*, "[b]ilateral[,] chronic[-]appearing peripheral groundglass/interstitial infiltrates consistent with chronic interstitial lung disease," "[b]ilateral[,] multiple pulmonary nodules indeterminate," "[m]ediastinal and hilar lymph nodes [that] could be reactive, old granulomatous disease and less likely neoplastic," and small hiatus hernia) *with* Tr. 630 (noting that an August 28, 2017 chest CT scan showed "[s]table noncalcified lung nodules when compared with prior outside study [from] 05/20/17," "[o]ther chronic lung changes . . . essentially unchanged," "[s]table lymph node prominence," "[s]mall hiatal hernia," and "[s]table low attenuating lesions involving liver and left kidney which are sub[-]centimeter and likely represent cysts") *and with* Tr. 951-52 (noting that a March 16, 2018 chest CT scan showed: "1. Overall, no significant change in appearance

of the lungs on the prior CT exams. Multiple stable small pulmonary nodules that measure up to 0.3 cm. Given the stability, these are considered probably benign. . . . 2. Stable appearance of subpleural pulmonary scarring/fibrosis. 3. Stable mildly enlarged mediastinal lymph nodes that measure up to 1.2 cm").)

Despite the stability in the CT scan results, Plaintiff argues that the treatment records are fully consistent with her testimony of residual breathing problems, such as dyspnea and occasional cough.   (*See* Tr. 584, 638, 640, 953.)   Yet, the record indicates that Plaintiff's asthma was mild, intermittent, without complication, and adequately controlled with Prednisone, and that her inhaler was helpful or not needed at all.   (*See* Tr. 26-27, 50, 468, 471, 586, 611, 658-59, 662, 823-24, 827, 830, 834-35, 945, 947 (also noting that Plaintiff did not need an inhaler because she was taking Prednisone every two to three weeks for her rheumatoid arthritis, which also relieved her asthma).)

Substantial evidence in the record also supports the ALJ's statement that Plaintiff's rheumatoid arthritis was stable.   (*See, e.g.*, Tr. 329, 345, 349, 353, 357, 929.)   Although Plaintiff regularly complained of pain and stiffness, her examinations were generally normal and Dr. Jeffrey Elston's

overall assessment was either good or very good.[6]   (Tr. 26-28, 490-91, 493, 620, 627, 672, 675, 678, 838, 852, 856, 860, 865, 877, 885, 895-96, 907-08, 916; *but see* Tr. 483 & 873 (noting fair overall assessment).)   Also, while Plaintiff states that even after taking Tramadol and Norco she continued to experience joint pain and stiffness, in her Supplemental Pain Questionnaire, she reported that the medications helped with her pain.   (Tr. 229.)

Additionally, the ALJ correctly observed that Plaintiff "did not require significant emergency medical treatment" (Tr. 30), because for the relevant period of time, the record shows only one emergency room visit—on May 20, 2017—for left-sided chest pain with radiation to the left arm.   (Tr. 26, 421-34.)   Also, contrary to Plaintiff's argument, the ALJ did not fail to consider the side effects of her medications.   (*See* Tr. 24 (assessing moderate limitations in understanding, remembering or applying information due to Plaintiff's "fatigue and medication effects"); Tr. 29, 465 & 471 (noting that "Lexapro was causing fatigue" and Zoloft "was making her feel more anxious"); *cf.* Tr. 829 & 834 (noting that in January and February of 2018, Plaintiff was doing well and was not having any problems with her medications)[7].)

---

[6] It should be noted that Dr. Elston's progress notes are partially illegible.

[7] At her rheumatology exams, Plaintiff did not report any adverse drug effects.   (*See* Tr. 483, 627, 675, 852, 856, 860, 865, 873, 895, 907, 916.)

Plaintiff also takes issue with the ALJ's consideration of her testimony regarding daily activities.   (Tr. 26, 29-30, 51-53.)   To the extent Plaintiff argues that the ALJ did not adequately consider her daily activities, Plaintiff is mistaken.   (*See* Tr. 26, 29-30.)   Further, to the extent Plaintiff argues that the ALJ should have assessed greater limitations in light of her reported daily activities, subjective complaints alone are insufficient to establish work-related limitation or disability.   *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ."").   Here, the ALJ's RFC assessment accounted for Plaintiff's impairments and any resulting limitations to the extent they were supported by credible evidence.   For example, while Plaintiff alleged that she had difficulty dressing, bathing, and caring for her hair, the ALJ noted that records from the Center for Behavioral Health described her as well-groomed and clean.   (Tr. 24, 26, 465, 468, 471, 474, 477, 542, 545, 548, 551, 554, 557, 560, 696, 700, 706, 712, 715.)   Thus, Plaintiff's argument that the ALJ did not meaningfully address the factors listed in 20 C.F.R. § 404.1529(c)(3) lacks merit.

Plaintiff's second argument also does not warrant a remand.   In the Eleventh Circuit, "[t]he finding of any severe impairment . . . is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including

impairments the ALJ determined were not severe." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011).   Therefore, even if the ALJ erred by not finding Plaintiff's IBS to be a severe impairment, the error is harmless because the ALJ found at least one severe impairment.   *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (per curiam) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [plaintiff] had a severe impairment: [sic] and that finding is all that step two requires. . . . Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").

At step two, the ALJ found that Plaintiff had the following severe impairments: rheumatoid arthritis, degenerative joint disease of the right shoulder, asthma with lung nodules and interstitial changes, anemia, chronic eczematoid otitis externa and conductive hearing loss, vertigo, chronic rhinitis, adjustment disorder, depressive disorder, and generalized anxiety disorder.   (Tr. 23.)   Although Plaintiff's IBS was not listed among the severe impairments, the ALJ did not ignore this impairment as he determined that Plaintiff's IBS, along with other non-severe impairments, did not significantly limit Plaintiff's ability to perform basic work activities.   (*Id.*) Moreover, the ALJ specifically stated that he considered all of Plaintiff's medically determinable impairments, including the non-severe ones, in

assessing the RFC and his discussion of the evidence supports his statement.
(*Id.*)

For example, in determining the RFC, the ALJ noted Plaintiff's testimony of having "problems with her small intestine and immune system" (Tr. 29), and her husband's statement that Plaintiff "must have immediate access to restrooms" (Tr. 26).   The ALJ also noted:

> During a GI examination with William Mayoral, M.D., on May 25, 2017, the claimant reported left lower quadrant pain with radiation to her left flank and left lower extremity, worsened by physical activity and movement.   She was not in acute distress. Her blood pressure was 130/89.   The claimant was started on a trial of Librax with [C]lidinium 3F/20-23).   Bloodwork collected on May 26, 2017, indicated a normal sedimentation rate by modified [W]estergren.   Her Alsolase level was within normal limits (Exhibit B6F/15-17).

> At a follow[-]up examination with Dr. Mayoral on June 9, 2017, he reviewed the claimant's workup and imaging studies, which ruled out [IBS], as well as other etiologies.   The claimant stated she did not experience relief after taking Librax for one week and discontinued taking it.

(Tr. 26-27.)   Further, as part of his discussion of Dr. Delgado's examination records, the ALJ noted that Plaintiff was taking medications for GERD, among other conditions.   (Tr. 28.)

As shown by the ALJ's decision, he adequately considered all of Plaintiff's impairments, both severe and non-severe, in combination.   *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, No. 13-14168, 572 F. App'x 949, 951-52 (11th Cir. 2014) (per curiam) ("[T]he ALJ stated that he evaluated

whether [plaintiff] had an 'impairment or combination of impairments' that met a listing and that he considered 'all symptoms' in determining her RFC. Under our precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence.").   Furthermore, while the ALJ considered all of Plaintiff's impairments, he incorporated into the RFC assessment only those limitations resulting from the impairments, which he found to be supported by the record.

Moreover, the ALJ's findings are supported by substantial evidence. (*See, e.g.*, Tr. 453 (noting that Dr. Mayoral's diagnoses after Plaintiff's endoscopy and colonoscopy did not include IBS); Tr. 512 (assessing diarrhea, GERD, and abdominal pain, but no IBS); Tr. 514, 516, 518, 520, 522, 524-27, & 687-89 (noting that Plaintiff underwent "extensive workup[,] including imaging studies, blood work and endoscopic intervention[,] [at Mayo Clinic, as a result of] which IBD was ruled out, as well as[] other etiologies"; noting that the possibility of IBS-D had been "discussed and entertained"; and also noting intermittent abdominal pain radiating to her left flank and left lower extremity, which was relieved only with Prednisone prescribed by her rheumatologist); Tr. 534 (noting normal hepatobiliary scan with normal ejection fraction); Tr. 692 (noting that a CT scan of the abdomen/pelvis from June 21, 2017 showed "[n]o acute process and no suspicious finding," and a

small hiatal hernia); Tr. 486 (noting no GI complaints); *see also* Tr. 468 (reporting no incontinence); *but see* Tr. 527 (assessing GERD, IBS, diverticular disease, and right upper quadrant abdominal pain).)   In sum, even if the ALJ erred in finding Plaintiff's IBS to be a non-severe impairment, a remand is not warranted, because the ALJ considered all of Plaintiff's impairments, both severe and non-severe, in combination at subsequent steps of the sequential evaluation process and his decision is supported by substantial evidence.

## III.   Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.   Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.   Based on this standard of review, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1.    The Commissioner's decision is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment consistent with

this Order, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 16, 2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record